Grechko v Maimonides Med. Ctr. (2020 NY Slip Op 06504)





Grechko v Maimonides Med. Ctr.


2020 NY Slip Op 06504


Decided on November 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
JEFFREY A. COHEN
SYLVIA O. HINDS-RADIX
JOSEPH J. MALTESE, JJ.


2016-03935 ON MOTION
 (Index No. 12681/10)

[*1]Inna Grechko, etc., appellant, 
v
Maimonides Medical Center, et al., respondents, et al., defendants. DECISION & ORDER Motion by the respondents for leave to reargue an appeal from a judgment of the Supreme Court, Kings County (Ellen Spodek, J.), entered February 25, 2015, which was determined by decision and order of this Court dated September 11, 2019, or in the alternative, for leave to appeal to the Court of Appeals from the decision and order of this Court. Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is ORDERED that the branch of the motion which was for leave to reargue is granted, the motion is otherwise denied, and, upon reargument, the decision and order of this Court dated September 11, 2019, is recalled and vacated, and the following decision and order is substituted therefor: Jeffrey E. Michels, New York, NY, for appellant.

Aaronson Rappaport Feinstein & Deutsch, LLP, New York, NY (Elliott J. Zucker of counsel), for respondents.
In an action to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Ellen Spodek, J.), entered February 25, 2015. The judgment, insofar as appealed from, upon a jury verdict, is in favor of the defendants Maimonides Medical Center and Reginald Orr and against the plaintiff, dismissing the complaint insofar as asserted against those defendants.
ORDERED that the judgment is reversed insofar as appealed from, on the law, with costs, the complaint is reinstated insofar as asserted against the defendants Maimonides Medical Center and Reginald Orr, and the matter is remitted to the Supreme Court, Kings County, for a new trial as to those defendants.
On June 1, 2008, the plaintiff's decedent presented to the emergency room at the defendant Maimonides Medical Center (hereinafter the Medical Center), where he was evaluated by the defendant Reginald Orr, an emergency room physician employed by the Medical Center. Orr diagnosed the decedent with pneumonia. In the decedent's medical record, Orr wrote that he "offered" the decedent hospitalization for fluids and IV antibiotics. However, the decedent was discharged from the emergency room the same day with oral antibiotics and instructions to follow up with his primary care physician. Although Orr testified at trial that he informed the decedent that [*2]his pneumonia was serious and required hospitalization, and that the decedent left the Medical Center against medical advice (hereinafter AMA), it is uncontested that Orr never requested that the decedent sign an AMA form before he was discharged.
On June 4, 2008, the decedent presented to his primary care physician, Vitaly Volovoy. After evaluating the decedent, Volovoy sent the decedent to Coney Island Hospital for further treatment. Emmanuil Rakhmanchik, an attending physician at Coney Island Hospital, wrote in the decedent's medical record that according to the decedent's primary care physician, the decedent signed an AMA form at the Medical Center. At a deposition, Volovoy testified that the decedent told him that he refused treatment at the Medical Center, and further that he was discharged home from the Medical Center. Additionally, Mohammed Uddin, a resident physician at Coney Island Hospital, wrote in the decedent's medical record that the decedent was recommended hospitalization at the Medical Center, but signed an AMA form. The decedent died at Coney Island Hospital on the evening of June 4, 2008.
The plaintiff alleges that the Medical Center and Orr were negligent in failing to recognize the seriousness of the decedent's pneumonia when he presented to the Medical Center on June 1, 2008. Prior to trial, the plaintiff moved, in limine, to preclude and/or redact so much of the entries by Rakhmanchik and Uddin in the decedent's medical record at Coney Island Hospital, and to preclude so much of the deposition testimony of Uddin and Volovoy, as pertained to discussions they had with the decedent. The Supreme Court denied the motion except for that branch of the motion which was to preclude so much of Rakhmanchik's entry as stated that, according to the decedent's primary care physician, the decedent signed an AMA form at the Medical Center, which the court determined was inadmissible hearsay. However, the court later permitted defense counsel to cross-examine the plaintiff's expert emergency medicine physician on the substance of Rakhmanchik's entry.
The jury returned a verdict in favor of the Medical Center and Orr (hereinafter together the defendants), and the Supreme Court entered a judgment, inter alia, dismissing the complaint insofar as asserted against them. On appeal, the plaintiff contends, inter alia, that the court should not have allowed the entries in the Coney Island Hospital record related to the decedent signing an AMA into evidence.
The defendants argue that the entries in the Coney Island Hospital records were admissible under the business records exception to the hearsay rule. Generally, "[a] hearsay entry in a hospital record is admissible under the business records exception to the hearsay rule if the entry is germane to the diagnosis or treatment of the patient" (Berkovits v Chaaya, 138 AD3d 1050, 1051; see CPLR 4518[a]). However, "where the source of the information on the hospital or doctor's record is unknown, the record is inadmissible" (Ginsberg v North Shore Hosp., 213 AD2d 592, 592). This is because "'each participant in the chain producing the record, from the initial declarant to the final entrant, must be acting within the course of regular business conduct or the declaration must meet the test of some other hearsay exception'" (Memenza v Cole, 131 AD3d 1020, 1022, quoting Murray v Donlan, 77 AD2d 337, 346). Here, although the entries were germane to the decedent's diagnosis and treatment, because the record does not reflect that the source of the information in the entries was known, it cannot be established whether the source had a duty to make the statement or whether some other hearsay exception applied (see Bloechle v Heritage Catering, Ltd., 172 AD3d 1294, 1296; Ardanuy v RB Juice, LLC, 164 AD3d 1296; Matter of Progressive Northeastern Ins. Co. v Randazzo, 24 AD3d 560, 560; Ginsberg v North Shore Hosp., 213 AD2d at 592). Specifically, Uddin's entry does not identify the source of the information, and Uddin testified that he had no independent recollection of the decedent informing him that he signed an AMA. Although Rakhmanchik's entry identified the decedent's "PCI," or primary care internist, as the source of the information, Rakhmanchik testified that he did not recall speaking with the decedent's primary care physician and did not recall the physician's name. Accordingly, the entries were not admissible under the business records exception to the hearsay rule.
If an entry in the medical records "is inconsistent with a position taken by a party at trial, it is admissible as an admission by that party, even if it is not germane to the diagnosis or [*3]treatment, as long as there is 'evidence connecting the party to the entry'" (Robles v Polytemp, Inc., 127 AD3d 1052, 1054, quoting Coker v Bakkal Foods, Inc., 52 AD3d 765, 766). Here, we agree with the Supreme Court's determination to preclude so much of Rakhmanchik's entry as stated that, according to the decedent's primary care physician, the decedent signed an AMA form at the Medical Center, as the entry states that the decedent's primary care physician, not the decedent himself, was the source of the information contained therein (see Robles v Polytemp, Inc., 127 AD3d at 1054; cf. Amann v Edmonds, 306 AD2d 362, 363). However, we disagree with the court's ruling that the plaintiff opened the door to the admission of Rakhmanchik's entry with the testimony of the plaintiff's expert physician. The expert did not testify to any conversations between the decedent's primary care physician and Rakhmanchik, but only to the decedent's own statements.
Moreover, we disagree with the Supreme Court that Uddin's entry was admissible as an admission, as the defendants failed to establish that the decedent was the source of the information that he left the Medical Center after signing an AMA form (see Coker v Bakkal Foods, Inc., 52 AD3d at 766; Cuevas v Alexander's, Inc., 23 AD3d 428, 429; Thompson v Green Bus Lines, 280 AD2d 468, 468; Echeverria v City of New York, 166 AD2d 409, 410).
Additionally, we disagree with the Supreme Court's determination that the deposition testimony of Uddin and Volovoy was admissible. Pursuant to CPLR 4519, otherwise known as the Dead Man's Statute, "[u]pon the trial of an action . . . a party or a person interested in the event . . . shall not be examined as a witness in his [or her] own behalf or interest . . . against the executor, administrator or survivor of a deceased person or the committee of a mentally ill person . . . concerning a personal transaction or communication between the witness and the deceased person or mentally ill person, except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his [or her] own behalf, of the testimony of the mentally ill person or deceased person is given in evidence, concerning the same transaction or communication." Here, both Volovoy and Uddin were defendants at the time they gave deposition testimony, making them interested parties under the statute (see Durazinski v Chandler, 41 AD3d 918, 920). Moreover, they both testified to transactions or communications with the decedent and sought to offer that testimony against the decedent's estate. Accordingly, the Dead Man's Statute applied to, and barred, the admission of their deposition testimony.
The defendants argue that the plaintiff waived the protections of the Dead Man's Statute by eliciting the communications at issue. However, "[t]he executor does not waive rights under the statute by taking the opponent's deposition" (Phillips v Kantor & Co., 31 NY2d 307, 313; see Wall St. Assoc. v Brodsky, 295 AD2d 262, 263). Additionally, although the defendants contend that Volovoy's deposition testimony was properly admitted for impeachment purposes, deposition testimony may only be used to impeach a witness "so far as admissible under the rules of evidence" (CPLR 3117[a]; see Rivera v New York City Tr. Auth., 54 AD3d 545, 547). Contrary to the defendants' contention, the declaration of the decedent did not fall within the declaration against interest exception to the hearsay rule because the defendants failed to establish that the subject statement was against the decedent's interest when made (see Field v Schultz, 308 AD2d 505, 506). Moreover, where the Dead Man's Statute renders a witness's testimony inadmissible, "the fact that the testimony would fall within an exception to the hearsay rule is simply irrelevant" (Wall St. Assoc. v Brodsky, 295 AD2d at 263 [internal quotation marks omitted]).
Under the circumstances here, the erroneous admission of the entries contained in the Coney Island Hospital record and the deposition testimony of Uddin and Volovoy cannot be deemed harmless, as the entries and testimony related to the very issue to be determined by the jury, i.e., whether Orr and the Medical Center failed to recognize the severity of the decedent's illness (see Cuevas v Alexander's, Inc., 23 AD3d at 429). A new trial is therefore necessary.
In light of our determination, we need not reach the plaintiff's remaining contentions.
RIVERA, J.P., COHEN, HINDS-RADIX and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court